**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| YOD DARA, | Case No.: 1:21-cv-00046-SKO |
| Plaintiff, | ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT KILOLO KIJAKAZI AND AGAINST PLAINTIFF DANIEL RICHARD HOGAN |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

## I.    INTRODUCTION

On January 12, 2021, Plaintiff Yod Dara ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). (Doc. 1.)   The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

/////

/////

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 7, 9.)

## II.     BACKGROUND

On April 24, 2018, Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act, alleging he became disabled on April 8, 2017.  (Administrative Record ("AR") 228-243.)  He alleges he became disabled due to a combination of physical impairments including diabetes, high blood pressure, high cholesterol, cardiac impairment, allergies, and back pain.  (AR 264.)  Plaintiff was born on October 2, 1961, and was 55 years old as of the alleged onset date. (AR 228.) Plaintiff completed two years of college.  (AR 265.)  He worked as a farm equipment machine operator from November 2014 to December 2015, and as a butcher from April 2015 until April 2017.  (AR 265.)

### A.     Relevant Medical Evidence[2]

#### 1.     George A. Alam, MD

On February 21, 2018, Plaintiff presented to St. Agnes Medical Center Emergency Department for complaints of generalized weakness, blurred vision, and generalized fatigue he had been experiencing for the past month. (AR 354.)  Plaintiff was diagnosed with uncontrolled diabetes mellitus, uncontrolled hypertension, and non-compliance with medication regimen. (AR 356.) Plaintiff was given prescriptions for Amaryl, Metformin, and Lisinopril.  (AR 360.)  Plaintiff was advised to follow up with his primary care physician and to take his medication as directed. (AR 358.) He was also advised to follow up with Dr. Usman Javed for a stress test.  (AR 359.)

#### 2.     Usman Javed, MD

Due to his complaints of intermittent chest pressure with exertion as well as palpitations, on March 26, 2018, Plaintiff underwent an echocardiogram scan. (AR 723.)  The results of the scan were mostly normal, but for a grade 1 diastolic dysfunction, trace tricuspid regurgitation, and left ventricular ejection fraction greater than 65%. (AR 723.)

On April 13, 2018, Plaintiff followed up with Dr. Javed for results of the echocardiogram and a treadmill stress test. (AR 719.)  The treadmill stress test was nondiagnostic because Plaintiff was limited by dyspnea and fatigue. (AR 719.)

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

     3.      Leslie E. Arnold, MD

On June 1, 2018, Dr. Arnold, a non-examining state agency physician, reviewed the available medical records and assessed Plaintiff's medical impairments of diabetes mellitus and spine disorders. (AR 70-74.)  Dr. Arnold noted tenderness and tight muscle band on both sides of Plaintiff's paravertebral muscles. (AR 71.)  A straight leg raising test yielded negative results showing no nerve root impairment. (AR 71.)  Dr. Arnold determined that Plaintiff could lift and/or carry up to 50 pounds occasionally and 25 pounds frequently. (AR 73.)  Dr. Arnold further determined that Plaintiff could stand and/or walk about 6 hours in an 8-hour workday and sit about 6 hours in an 8-hour workday. (AR 73.)  Dr. Arnold found that Plaintiff had no restrictions on pushing and pulling movements other than the above limitations for lift and/or carry, (AR 73), and that Plaintiff could frequently climb ramps, stairs, ropes, ladders, and scaffolds. (AR 73.)  He also found that Plaintiff was able to balance, stoop, kneel, crouch, and crawl frequently. (AR 73-74.)  Plaintiff had no manipulative, visual, communicative, or environmental limitations.  (AR 74.)  Dr. Arnold concluded that Plaintiff was able to perform medium work. (AR 75.)

     4.      R. Dwyer, MD

On August 28, 2018, a second reviewing physician, Dr. Dwyer, reviewed the available medical records including additional notes and X-rays from June 2018 to August 2018. (AR 100-05.)  Dr. Dwyer found that Plaintiff could lift and/or carry up to 50 pounds occasionally and 25 pounds frequently. (AR 104-05.)   Dr. Dwyer found that Plaintiff could sit, stand and/or walk about 6 hours in an 8-hour workday. (AR 105.)  Dr. Dwyer found that Plaintiff had no restrictions on pushing and pulling movements other than the above limitations for lift and/or carry. (AR 104-05.)  He further found that Plaintiff could frequently climb ramps, stairs, ropes, ladders, and scaffolds. (AR 105.)  He also found that Plaintiff was able to balance, stoop, kneel, crouch, and crawl frequently. (AR 105.)  Plaintiff had no manipulative, visual, communicative, or environmental limitations.  (AR 105.)  Dr. Dwyer concluded that Plaintiff was able to perform medium work. (AR 109.)

     5.      Daniel S. Patrick, M.D.

On December 14, 2018, Plaintiff underwent a myocardial perfusion imaging study. (AR 646.)  According to Dr. Patrick, the study showed no evidence for ischemia or prior perfusion injury, no

evidence to suggest a myocardial perfusion defect, and an estimated left ventricular ejection fraction of 74%. (AR 646.)  The study resulted in "normal" findings. (AR 646.)

        6.      Billy Redmond, MD

        On June 5, 2018, Plaintiff received an initial assessment from Dr. Redmond following his diagnosis in February 2018 of diabetes mellitus.  (AR 496.)  Plaintiff reported long-standing, non-radiating lower back pain, pain in his right knee, and numbness and tingling in both feet and hands. (AR 496.)  Plaintiff also complained of irregular heartbeats and palpitations.  (AR 496.)  Dr. Redmond assessed Plaintiff with uncontrolled diabetes mellitus type 2, back pain, right knee pain, palpitations, hoarseness of voice, hyperlipidemia, allergic rhinitis, diabetic neuropathy, and hypertension. (AR 497.)  He was prescribed Lisinopril, Lovastatin, Loratadine, Glimepiride, Promethazine-DM, aspirin, Metformin, Diphenhydramine HCl, Fluticasone, and Gabapentin. (AR 497-98.)  Dr. Redmond found Plaintiff's hypertension was controlled, and he ordered X-rays for the back and knee.

        On June 12, 2018, X-rays were taken of Plaintiff's right knee and lumbar spine. (AR 514.) The X-rays showed minimal chronic or degenerative changes with nothing acute. (AR 514.)

        On September 19, 2018, Plaintiff sought treatment with Dr. Redmond for complaints of depressed mood, decreased energy, crying, and sleep disturbance. (AR 693.)  Plaintiff denied experiencing chest pain, irregular heartbeats, palpitations, syncope, dyspnea on exertion, orthopnea, shortness of breath, wheezing, abnormal sputum production, anxiety, depression or difficulty sleeping. (AR 693.)  Plaintiff was prescribed Zoloft for depression. (AR 693.)

        On November 1, 2018, Plaintiff followed up with Dr. Redmond for his six-month assessment. (AR 695.)  Plaintiff reported no concerns and stated, as to his diabetic condition, he had been complying with medications and diet; however, he had not been taking his medications for his hypertension. (AR 695.)  Plaintiff stated his depression was doing better on Zoloft. (AR 696.)  Plaintiff stated he had been experiencing back pain, but he denied joint pain, joint swelling, muscle pain or muscle cramps. (AR 697.)

        On November 7, 2018, Plaintiff saw Dr. Redmond and requested a single point cane and disabled parking placard. (AR 702.)  Dr. Redmond noted that Plaintiff had previously been seen for complaints of back pain, that a full back exam conducted on June 5, 2018, was essentially normal, and

that Plaintiff had been referred to physical therapy, but failed to attend. (AR 702.)  Dr. Redmond noted

that Plaintiff stood and walked without assistance, and had normal gait, heel walk and toe walk. (AR

702.)  Dr. Redmond withheld his recommendation regarding a cane and disabled placard until after

Plaintiff completed a physical therapy assessment. (AR 702.)

On May 10, 2019, Plaintiff presented again to Dr. Redmond for annual assessment. (AR 685.)

Dr. Redmond noted Plaintiff's complaints of intermittent back pain, and also noted that Plaintiff had

still not attended physical therapy, and there were no X-rays on file. (AR 685.)  Plaintiff was again

referred to physical therapy for a spinal X-ray and assessment. (AR 687-88.)

On June 4, 2019, Plaintiff followed up with Dr. Redmond. (AR 679.)  Plaintiff reported he had

been working on improving his diet, and that his neuropathy was well controlled. (AR 679.)

On September 23, 2019, X-rays of Plaintiff's lumbar spine were taken. (AR 674.)  The X-rays

showed satisfactory alignment of the lumbar spine, well-maintained height in the vertebral bodies, no

fractures, satisfactory disc spaces at all levels, and mild anterior interbody spurring in the upper

lumbar spine. (AR 674.)

On November 4, 2019, Plaintiff was seen by Dr. Redmond for a six-month assessment. (AR

660.) Dr. Redmond noted that X-rays taken of Plaintiff's back and knee were essentially normal. (AR

660.)  Plaintiff reported his back pain was better, his shoulder would get sore occasionally, but that it

was not a problem, and that his knees were not causing significant pain at that time. (AR 660.)

### 7.    Ashinja Lersey, DNP, NP-C

On April 6, 2020, Nurse Practitioner Lersey, apparently a nurse in Dr. Redmond's office,

completed a form indicating that Plaintiff had been experiencing shoulder pain, back pain, knee pain

and diabetic neuropathy. (AR 35, 634.)  N.P. Lersey indicated clinical findings and objective signs to

be "self report, labs, outside consultations, monthly checkups." (AR 634.)  N.P. Lersey estimated that

Plaintiff could not sit longer than 15 minutes before needing to get up, stand longer than 10 minutes

before needing to sit down or walk around, and sit or stand/walk longer than 2 hours in an 8-hour

working day. (AR 635.)  N.P. Lersey further noted that Plaintiff would need 10-minute breaks every

15 minutes, and would need to use a cane. (AR 635.)  She also indicated that Plaintiff could rarely lift

and carry 10 pounds or less, never carry more than 20 pounds, rarely twist, and never stoop, crouch,

squat, climb stairs or climb ladders. (AR 635-36.)  N.P. Lersey noted Plaintiff was incapable of even low stress work, that he would be "off task" for 25% or more of a typical workday, and that he would miss more than four days per month. (AR 636.)

    8.  Aimee V. Sanchez, Ph.D.

  On October 18, 2018, a comprehensive psychological evaluation was performed by Dr. Sanchez at the request of the Disability Determination Service of the Department of Social Services. (AR 560.)  Plaintiff complained of severe mood and anxiety symptoms in addition to his chronic medical conditions of high blood pressure, diabetes, and high cholesterol. (AR 561.)  Dr. Sanchez administered various tests and determined that Plaintiff suffered from severe, recurrent major depressive disorder without psychotic features.  (AR 560-567.)  Plaintiff's psychosocial stressors included limited coping skills, health issues, unemployment, and financial stressors. (AR 567.)

  Dr. Sanchez found Plaintiff's prognosis to be fair. (AR 568.)  Dr. Sanchez found no impairment to Plaintiff's ability to understand, remember, and carry out simple one or two-step instructions.  (AR 568.)  Dr. Sanchez found Plaintiff was mildly impaired in his ability to follow detailed and complex instructions.  (AR 568.)  She found Plaintiff was moderately impaired in his ability to: relate and interact with co-workers and the public; maintain concentration and attention, persistence and pace; associate with day-to-day work activity including attendance and safety; accept instructions from supervisors; maintain regular attendance in the workplace and perform work activities on a consistent basis; and perform work activities without special or additional supervision. (AR 568.)

    9.  J. Akaka, M.D.

  On November 20, 2018, Dr. Akaka reviewed the psychiatric evidence in the file and found that the evidence was insufficient to determine psychiatric impairment.  (AR 102.)  Dr. Akaka concluded that Plaintiff had mild limitation due to depressive disorder, and that the cumulative medical and non-medical evidence did not reasonably support a finding that Plaintiff had greater or additional limitations.  (AR 103.)  Dr. Akaka noted that the record showed Plaintiff retained the ability to understand, remember, and carry out simple work-related tasks, had no significant limitations in the ability to sustain concentration/persistence/pace, relate to others, or otherwise adapt to the

1  requirements of the normal workplace.  (AR 103.)  Dr. Akaka found that despite his depressive

2  disorder, Plaintiff retained the capacity to perform simple repetitive tasks in competitive settings. (AR

3  103.)

4        C.     <u>Administrative Proceedings</u>

5        The Commissioner initially denied Plaintiff's applications for SSI and DIB on June 1, 2018.

6  (AR 137-46.)  Plaintiff's applications were denied again on reconsideration on November 26, 2018.

7  (AR 156-66.)  Consequently, Plaintiff requested a hearing before an Administrative Law Judge

8  ("ALJ").  At a hearing held on June 17, 2020, Plaintiff appeared with counsel and testified before an

9  ALJ as to his alleged disabling conditions. (AR 32-66.)  On August 5, 2020, the ALJ determined that

10  Plaintiff was not disabled insofar as he could perform other jobs that existed in significant numbers in

11  the national economy. (AR 25-26.)

12        D.     <u>The ALJ's Decision</u>

13        In his decision dated August 5, 2020, the ALJ found that Plaintiff was not disabled, as defined

14  by the Act. (AR 12–26.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §

15  416.920. (AR 17-26.)  The ALJ determined that Plaintiff had not engaged in substantial gainful

16  activity since April 8, 2017, the alleged onset date (step one). (AR 17.)  At step two, the ALJ found

17  Plaintiff's following impairments to be severe: minimal degenerative changes to the right knee, mild

18  anterior interbody spurring of the upper lumbar spine, diabetes mellitus, and depression. (AR 17.)

19  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one

20  of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).

21  (AR 18.)

22        The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at steps four and five.

23  <u>See</u> 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual

24  functional capacity. . . . We use this residual functional capacity assessment at both step four and step

25  five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

26       to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he
     can lift and carry 50 pounds occasionally and frequently 25. The claimant can sit, stand

27       and or walk for about 6 hours each out of an 8-hour workday. The claimant can frequently
     climb ramps, stairs, ladders and scaffolds. The claimant can do simple and repetitive type

28       work, that requires routine work-related decision-making and occasional contact with
     coworkers and the general public.

1   (AR 19.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to

2   cause the alleged symptoms[,]" he rejected Plaintiff's subjective testimony as "not entirely consistent

3   with the medical evidence and other evidence in the record[.]" (AR 20.)

4        The ALJ determined that Plaintiff was unable to perform any past relevant work (step four).

5   (AR 24.)  The ALJ concluded that Plaintiff was not disabled because Plaintiff could perform a

6   significant number of other jobs in the national economy, specifically: "cleaner industrial," Dictionary

7   of Operational Titles ("DOT") code 381.687-018; "hand packer," DOT code 920.587-018; and

8   "cleaner II," DOT code 919.687-014 (step five). (AR 25.)

9        Plaintiff sought review of the ALJ's decision before the Appeals Council, which denied review

10   on November 24, 2020. (AR 1.)  The ALJ's decision, therefore, became the final decision of the

11   Commissioner. 20 C.F.R. § 416.1481.

12   **III.   LEGAL STANDARD**

13        A.     Applicable Law

14        An individual is considered "disabled" for purposes of disability benefits if he or she is unable

15   "to engage in any substantial gainful activity by reason of any medically determinable physical or

16   mental impairment which can be expected to result in death or which has lasted or can be expected to

17   last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). However, "[a]n

18   individual shall be determined to be under a disability only if his physical or mental impairment or

19   impairments are of such severity that he is not only unable to do his previous work but cannot,

20   considering his age, education, and work experience, engage in any other kind of substantial gainful

21   work which exists in the national economy." Id. at § 1382c(a)(3)(B).

22        "The Social Security Regulations set out a five-step sequential process for determining whether

23   a claimant is disabled within the meaning of the Social Security Act." Tackett v. Apfel, 180 F.3d 1094,

24   1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); see also 20 C.F.R. § 416.920. The Ninth Circuit

25   has provided the following description of the sequential evaluation analysis:

26        In step one, the ALJ determines whether a claimant is currently engaged in substantial
         gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two
27        and evaluates whether the claimant has a medically severe impairment or combination of
         impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and
28        considers whether the impairment or combination of impairments meets or equals a listed
         impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically

presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC]...to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); see also 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." Burch, 400 F.3d at 679 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue h[is] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." Id. (citing Swenson, 876 F.2d at 687).

B.     Scope of Review

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Tackett, 180 F.3d at 1097 (citation omitted). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

"This is a highly deferential standard of review . . . ." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999).  Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Id.; see, e.g., Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

1    In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of

2    the Commissioner.  Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996).  The Court must instead

3    determine whether the Commissioner applied the proper legal standards and whether substantial

4    evidence exists in the record to support the Commissioner's findings.  See Lewis v. Astrue, 498 F.3d

5    909, 911 (9th Cir. 2007).  Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by

6    isolating a specific quantum of supporting evidence.'"  Tackett, 180 F.3d at 1098 (quoting Sousa v.

7    Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)).  "Rather, a court must 'consider the record as a whole,

8    weighing both evidence that supports and evidence that detracts from the [Commissioner's]

9    conclusion.'"  Id. (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).

10    Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless."

11    Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing Stout v. Comm'r, Soc. Sec. Admin., 454

12    F.3d 1050, 1055–56 (9th Cir. 2006)).  Harmless error "exists when it is clear from the record that 'the

13    ALJ's error was inconsequential to the ultimate nondisability determination.'"  Tommasetti v. Astrue,

14    533 F.3d 1035, 1038 (9th Cir. 2008) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th

15    Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking

16    the agency's determination."  Shinseki v. Sanders, 556 U.S. 396, 409 (2009) (citations omitted).

17    **IV.    DISCUSSION**

18         A.      Substantial Evidence Supports the RFC

19    Plaintiff first claims that the ALJ's RFC limitation to medium work is not supported by

20    substantial evidence.  He claims the record documents a significant degree of limitation due to severe

21    peripheral neuropathy and lumbar degenerative disease which would not support a limitation to

22    medium work.  Plaintiff asserts that the ALJ based his RFC determination on the non-examining state

23    agency physicians' opinions who failed to review the record as a whole, and whose opinions are

24    contradicted by the bulk of the evidence in the record.  Plaintiff further alleges that the ALJ failed to

25    further develop Plaintiff's medical history, by not seeking an opinion from an examining physician

26    source or submitting the updated records to an acceptable medical professional.

27    Defendant counters that the ALJ could rely on the non-examining agency physicians' opinions

28    and findings, because the ALJ considered the record as a whole, and found that the additional evidence

in the record did not show any worsening symptoms.  Defendant further contends Plaintiff's claim that the ALJ failed to develop the record further is disingenuous given the fact that Plaintiff's attorney affirmatively told the ALJ he could and should decide the case based on the medical evidence as it stood before him.  Defendant also notes that the ALJ had attempted to obtain a consultative examination which Plaintiff failed to attend, and when the ALJ so advised Plaintiff's attorney, the attorney did not request another examination or further development, but maintained the record was sufficient.

Defendant's contentions are persuasive.  As an initial matter, Defendant correctly contends that Plaintiff cannot now complain that the record was not fully developed.  As noted by Defendant, Plaintiff's attorney stated the record was complete.  (AR 35.)  Furthermore, the ALJ attempted to develop the record further by ordering a consultative examination—which Plaintiff failed to attend.  (AR 39-40.)  When this was brought to Plaintiff's attorney's attention, he neither requested further development of the record, nor suggested that an examination be rescheduled.  (AR 40.)  Thus, Defendant correctly notes that it is inconsistent for Plaintiff to now complain that the ALJ failed to develop the record.

With respect to Plaintiff's assertion that the non-examining state agency physicians' opinions were unacceptable and it was error for the ALJ not to seek an opinion from an examining physician, there is no requirement that an ALJ must obtain an examining opinion in every case before rendering an RFC determination.  Such a rule would tend to contravene established circuit precedent that the RFC need not mirror any particular opinion and would directly contravene the regulations that provide that the agency *may* obtain a consultative examination to resolve evidentiary ambiguity or insufficiency, not that an ALJ *must* do so in every case.  See 20 C.F.R. § 404.1519a; Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989); Turner v. Comm'r Soc. Sec. Admin., 613 F.3d 1217, 1222-23 (9th Cir. 2010).

While it is undoubtedly true that an ALJ may not render an RFC determination without the aid of a medical opinion, as noted above, the ALJ reviewed several medical opinions in this case, including, *inter alia,* the opinions of: Ashinja Lersey, DNP, NP-C; Aimee Vickers-Sanchez, Ph.D.; L. Arnold, M.D.; R. Dwyer, M.D.; and J. Akaka, M.D.  (AR 22-23.)  The ALJ considered the evidence

as a whole and determined that the record supported Dr. Arnold's and Dr. Dwyer's opinions and the RFC limitation of medium work.  The ALJ noted that Dr. Arnold based his opinion on the mild findings observed in the record and Plaintiff's self-reporting that he could perform light housekeeping, drive a car, run errands, and clean his room.  The ALJ noted that Dr. Dwyer reviewed the medical records as of August 28, 2018, and concluded there had been no changes with respect to the initial determination. The ALJ noted that the medical records provided mild findings, essentially normal physical examinations, and improvement in 2019.  The ALJ found the opinions persuasive because they were consistent with the medical evidence.

With respect to Plaintiff's allegation of a lack of a full record, the ALJ thoroughly considered the medical records subsequent to the state agency physicians' findings and determined that the physicians' opinions were consistent with the record as a whole.  Regardless of Plaintiff's claim that the medical record was incomplete, the record reflects that the ALJ conducted a full review of the evidence in the record, and reasonably found that the subsequent evidence was unremarkable and consistent with the earlier opinions.

### B.      Weighing of Medical Opinions

Plaintiff alleges the ALJ erred by rejecting the only treating or examining medical source of record, N.P. Lersey, absent either specific or legitimate reasons or substantial evidence. He also alleges it was error for the ALJ to rely on the opinions of Dr. Arnold and Dr. Dwyer.

Plaintiff applied for DIB and SSI benefits under Titles II and XVI of the Act on April 24, 2018, so the new regulations apply to his claim.  Under the new regulations, the definition of what constitutes a medical opinion has narrowed, focusing on what the claimant can do despite his impairments and what work-related limitations are present.[3]  The new regulations define a medical opinion as follows:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities:
>
> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions

---

[3] Compare 20 C.F.R. § 404.1527 with 20 C.F.R. § 404.1513(a)(2).

(including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

(ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(iv) Your ability to adapt to environmental conditions, such as temperature or fumes.

20 C.F.R. § 404.1513(a)(2).

The new regulations provide that the ALJ no longer gives any particular weight to a medical opinion based on its source, thereby eliminating the treating source rule. Instead, the ALJ considers the persuasiveness of a medical opinion based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including length, extent, and type of treatment; (4) specialization; and (5) other relevant factors that support or contradict the medical opinion. 20 C.F.R. § 404.1513. Supportability and consistency are considered the most important factors for evaluating persuasiveness.[4] Supportability and consistency are explained as follows in the regulations:

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

Generally, these are the only two factors the ALJ is required to address in his decision. However, when two or more medical opinions or prior administrative medical findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the

---

[4] The regulations state, "The factors of supportability ... and consistency ... are the most important factors [the SSA] consider[s] when [the SSA] determine[s] how persuasive [the SSA] find[s] a medical source's medical opinions or prior administrative medical findings to be." 20 C.F.R. § 404.1520c(b)(2) (for claims filed on or after March 27, 2017).

13

same," the ALJ must explain how "the other most persuasive factors" were considered.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (for claims filed on or after March 27, 2017).

Here, the ALJ found the opinions of the non-examining state agency physicians, Dr. Arnold and Dr. Dwyer, to be persuasive as they were based on a review of the evidence of record and consistent with the same.  (AR 23-24.)  The ALJ determined that their opinions were consistent and supported by the record as the medical records showed essentially normal physical examinations, mild findings, and Plaintiff's self-reported improvement in 2019.  And, as previously discussed, Plaintiff cannot now contend the records were incomplete given his counsel's statements at the hearing.  (AR 35, 38-40.)  Nevertheless, the subsequent evidence was unremarkable and consistent with the prior findings.

The ALJ also considered the opinion of N.P. Lersey, but found her opinion to be unpersuasive.  (AR 22-23.)  The ALJ noted that the only medical record involving N.P. Lersey was a physical medical source statement dated April 2020.  (AR 22.)  The ALJ further noted that although N.P. Lersey treated at Fresno Pace, there were no progress notes indicating she had ever examined Plaintiff.  (AR 22.)  The ALJ noted that N.P. Lersey's findings were based on self-report and monthly checkups at Fresno Pace.  (AR 22.)  The ALJ reasonably determined that N.P. Lersey's very restrictive opinion was inconsistent and unsupported by the medical record.  See 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

An ALJ may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been properly discounted as incredible.  Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir.1999) (citing Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989)).  The ALJ also considered N.P. Lersey's familiarity with Plaintiff and noted that there was no indication in the treatment notes of N.P. Lersey ever having examined Plaintiff.  See 20 C.F.R. § 404.1520c(c)(3).  The ALJ also noted that N.P. Lersey's opinion was inconsistent with all other medical records from her treating facility, Fresno Pace.  (AR 23.)  According to Dr. Redmond of Fresno Pace, a full back exam conducted on June 5, 2018, was essentially normal. (AR 702.)  Dr. Redmond noted that Plaintiff stood and walked without assistance, and had normal gait, heel walk and toe walk. (AR 702.)  In addition, September 23, 2019, X-rays of Plaintiff's lumbar spine showed

satisfactory alignment of the lumbar spine, well-maintained height in the vertebral bodies, no fractures, satisfactory disc spaces at all levels, and mild anterior interbody spurring in the upper lumbar spine. (AR 660, 674.) The findings were essentially normal.  (AR 660, 674.)  Dr. Redmond reported that on November 4, 2019, Plaintiff indicated his back pain was better, that his shoulder would get sore occasionally, but that it was not a problem, and that his knees were not causing significant pain at that time. (AR 660.)  Plaintiff ambulated under his own power with a cane, had 5/5 strength in the bilateral upper and lower extremities.  (AR 662.)

Accordingly, the ALJ reasonably determined that N.P. Lersey's opinion was unsupported and inconsistent with the medical record and found her opinion unpersuasive.  The ALJ reasonably found Dr. Arnold's and Dr. Dwyer's opinions supported and consistent with the medical record, and therefore persuasive.

C.    Symptomology Evidence

Plaintiff alleges the ALJ erred by rejecting his symptomology evidence in broad and vague terms absent any analysis of the medical evidence of record.  Defendant contends the ALJ provided several compelling reasons for finding Plaintiff's allegations inconsistent with the record.

In evaluating the credibility of a claimant's testimony regarding his impairments, an ALJ must engage in a two-step analysis. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.  Id.  The claimant is not required to show that his impairment "could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)).  If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection.  Id.  As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the

claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted); see also Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting Moore v. Comm'r of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)).  General findings are not sufficient to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" Burrell v. Colvin, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 20.) The ALJ also found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 20.)  Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding.  See Vasquez, 572 F.3d at 591.  Here, the ALJ discounted Plaintiff's testimony as inconsistent because it was not supported by the objective evidence of record. (AR 20.)

### 1.      Objective Evidence of Record

"[T]he Ninth Circuit has repeatedly emphasized that, 'in evaluating the credibility of . . . testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of [the impairment].'" Ondracek v. Comm'r of Soc. Sec., No., 1:15–cv–01308–SKO, 2017 WL 714374, at *8 (E.D. Cal. Feb. 22, 2017) (quoting Burch, 400 F.3d at 680);

see, e.g., Rollins, 261 F.3d at 857 (a claimant's testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence).  Nonetheless, "lack of medical evidence . . . is a factor that the ALJ can consider in his credibility analysis."  Burch, 400 F.3d at 681.

The ALJ discounted Plaintiff's testimony regarding his allegations of disabling conditions in part because Plaintiff's complaints were inconsistent with the medical evidence. (AR 20-24.) The ALJ provided substantial support for this conclusion.  The ALJ set forth notable medical findings that were inconsistent with Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms.

The ALJ noted that Plaintiff's alleged impairments included diabetes, high blood pressure, cholesterol, cardiac protection, allergies and back pain. (AR 20.)  In February 2018, Plaintiff presented to the emergency room with generalized weakness, blurred vision and fatigue.  (AR 20.)  The ALJ noted that Plaintiff also endorsed symptoms of body aches, headache, and weight loss.  (AR 20.)  The ALJ noted that the examination revealed Plaintiff was alert, in mild distress, had normal speech, and moved all extremities at baseline. (AR 20.)  The ALJ noted that Plaintiff's discharge diagnoses were non-compliance with medication regimen, diabetes mellitus out of control, and hypertension. (AR 20.)

The ALJ reviewed medical records from The Heart Group with respect to a treadmill stress test and echocardiogram study. (AR 20.)  The ALJ noted that the study revealed a normal left ventricular systolic function, a left ventricular ejection fraction of 65%, no resting wall abnormalities, and trace mitral regurgitation. (AR 20.)  The follow-up examination in July 2018 revealed Plaintiff could perform his daily living activities; he could ambulate without assistance; he was in no acute distress; he had no edema, clubbing or cyanosis; he was alert and oriented; he had normal speech; he had no focal findings or movement disorders; he had no tremors; and his strength was rated 5 out of 5.  (AR 20.) The ALJ noted that his symptoms of dyspnea and chest pressure had improved somewhat since his last visit with the institution of a beta blocker. (AR 20.)

The ALJ considered the examination done in April 2018 at Greater Health Organization. (AR 21.)  The examination revealed Plaintiff to be alert and active, well-developed, well groomed, and in no acute distress.  (AR 21.)  A lumbar spine examination revealed no scoliosis, asymmetry or abnormal curvature. (AR 21.)  Paravertebral muscles revealed tenderness and tight muscle band on

both sides. (AR 21.) A straight leg raise test was negative. (AR 21.) A diabetic foot exam revealed sensation was 2+ and normal, skin was intact, proprioception was intact in all toes, no pedal or ankle edema was present, no gross abnormalities were noted, and lower extremities had no edema, cyanosis or weakness. (AR 21.)

A visit to Kings Winery Medical Clinic on May 3, 2018, was also noted.  (AR 21.)  Plaintiff presented with a runny nose and sneezing.  He had allergic rhinitis and hypertension, and his blood pressure as 183/83, uncontrolled. (AR 21.) Significantly, the examining physician, Bounmy Pinyasasone, PA-C, noted, "*The diabetes is not cause for him to stop work*." (AR 21.) A physical examination revealed normal findings, including intact sensation of the feet, negative straight leg raise test, and no gross abnormalities.  (AR 21.)  It was noted that Plaintiff was not adhering to his medication regimens. (AR 21.)

The ALJ noted certain findings of Dr. Billy Redmond.  (AR 21.) In June 2018, Plaintiff presented with complaints of palpitations, voice hoarseness, low back pain, right knee pain, and numbness and tingling in both feet. (AR 21.)  An examination revealed decreased range of motion of the back and a positive McMurray sign in the right knee. (AR 21.)  The diagnoses were diabetes mellitus type II controlled, back pain, right knee pain, palpitations, hoarseness of voice, hyperlipidemia, allergic rhinitis, diabetic neuropathy, and hypertension. (AR 21.)

The ALJ noted that on June 6, 2018, Plaintiff presented to the emergency room with complaints of shortness of breath and palpitations.  (AR 21.)  Physical examination revealed he was alert and oriented, and in no acute distress. (AR 21.)   Plaintiff's ankles, feet and toes were noted to be grossly normal, his muscle strength was adequate and no sensation problems were noted.  (AR 21.) His deep tendon reflexes were equal and symmetrical, he was noted to have a positive PPD test and his liver function was slightly elevated.  (AR 21.)  He was discharged with diagnoses of elevated transaminases, fatty liver, shortness of breath, ACS ruled out, hyponatremia, type II diabetes mellitus with hyperglycemia, hypertension and hyperlipidemia. (AR 21.)

The ALJ noted that an X-ray of the right knee in June of 2018 revealed minimal chronic changes and an old fracture of the medial epicondyle.  (AR 21.)  X-ray of the lumbar spine revealed osteopenia and minimal degenerative changes, particularly in the lower facet joints. (AR 21.)  Plaintiff

complained of wrist and hand pain, and an X-ray showed mild degeneration of the base of the thumb. (AR 21.)

During a follow-up in November 2018, Plaintiff complained of low back pain and palpitations. (AR 21.)  Plaintiff requested a DMV handicap placard and a cane.  (AR 21.) The ALJ noted that Dr. Redmond deferred prescribing a cane or completing DMV paperwork until Plaintiff was assessed by a physical therapist. (AR 21-22.)  The ALJ noted that there was no evidence in the record that Plaintiff was ever prescribed a cane or walker, or that he had been advised to use one by any medical professional. (AR 22.)

The ALJ noted that a December 2018 myocardial perfusion study was normal.  (AR 22.)  A February 2019 echocardiogram revealed mild concentric LVH and evidence of dystonic dysfunction. (AR 22.)  An aorta ultrasound performed in April 2019 was normal. (AR 22.) The ALJ noted that an examination in May 2019 recorded normal Holter findings.  (AR 22, 685.)  Though Plaintiff reported occasional palpitations, shortness of breath and foot swelling, objective physical examination findings were well within normal limits including good motor strength, normal gait, no leg edema, and good in equal distal pulses. (AR 22, 685.)  Plaintiff was diagnosed with diabetes mellitus, hypertension, and palpitations with exertion.  An echocardiogram was within normal limits, and a cardiolite stress test was within normal limits. (AR 22, 685.)

The ALJ noted that in June 2019, Plaintiff indicated to Dr. Redmond that he was doing better, and his medications were continued. (AR 22.)  A September 2019 X-ray of the lumbar spine revealed mild anterior interbody spurring of the upper lumbar spine.  (AR 22.)

The ALJ noted that on October 7, 2019, InSight Vision Center examined Plaintiff for a diabetic eye exam. (AR 22.)  The ALJ noted that Plaintiff was assessed with diabetes mellitus type II without retinopathy, and that there were no signs of nonproliferative or proliferative retinopathy in either eye. (AR 22.)

An examination was conducted by Fresno Pace on November 4, 2019. (AR 22.)  Plaintiff indicated his back pain was better and he was open to going to physical therapy.  (AR 22.)  He reported occasional right shoulder pain that was not a problem.  (AR 22.)  He noted his right knee was not causing any significant problems at this time.  (AR 22.)  The ALJ noted that during the physical

examination, Plaintiff ambulated into the examination room under his own power with a cane, and Plaintiff had 5/5 strength in the bilateral upper and lower extremities, and was able to rise and walk. (AR 22.)

The ALJ determined that the medical evidence showed only mild or normal findings consistent with Dr. Arnold's and Dr. Dwyer's opinions. The Court finds that the ALJ properly considered inconsistency with the objective medical evidence as one of several "clear and convincing" reasons to discount Plaintiff's credibility. See Salas v. Colvin, No. 1:13–cv–00429–BAM, 2014 WL 4186555, at *6 (E.D. Cal. Aug. 21, 2014).

In addition, the ALJ considered Plaintiff's "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Tommasetti, 533 F.3d 1035 at 1039. According to the medical record, Plaintiff failed to attend physical therapy for his symptoms despite Dr. Redmond's *repeated* recommendations. (AR 685, 660.) The ALJ also noted that Plaintiff stated he required a cane; however, Dr. Redmond declined to prescribe one until Plaintiff attended physical therapy. (AR 21-22.)

The ALJ further found Plaintiff's complaints about the severity of the symptoms inconsistent with his statements to, and the observations of, his treatment providers. See 20 C.F.R. § 404.1529(c)(4). In 2018, Plaintiff stated during a physical examination that he was capable of performing his activities of daily living, and he was observed ambulating without assistance. (AR 20, 714.) In a 2019 examination, he was observed with having a normal gait. (AR 641.) On November 1, 2018, he self-reported only occasional lower back pain that occurs if he sits too long. (AR 695.) On May 10, 2019, Dr. Redmond stated Plaintiff complained of intermittent back pain. (AR 685.) On November 4, 2019, Plaintiff stated his back pain was better, his shoulder got sore occasionally but was not a problem, and his right knee was not causing significant pain. (AR 660-61.) Such statements were notably inconsistent with his hearing testimony that he experienced constant, disabling, daily pain on a scale of at least 7 out of 10. (AR 54.)

The ALJ further noted Plaintiff's stated abilities of light housework (AR 285, 291); self-dressing, self-bathing, and personal hygiene (AR 563); some shopping (AR 291); easy-meal preparation (AR 52); and driving (AR 295, 291); were inconsistent with the alleged presence of a

condition that would preclude all work activity.  (AR 24.)  While Plaintiff alleges he had some difficulty in performing these activities, the ALJ could still rely on this evidence to discredit Plaintiff's testimony as to the intensity and severity of his symptoms.  Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) ("[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment").

## CONCLUSION AND ORDER

After consideration of the Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of Court is directed to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Yod Dara.

IT IS SO ORDERED.

Dated:   **February 24, 2022**                   /s/ *Sheila K. Oberto*
                                                UNITED STATES MAGISTRATE JUDGE